The defendant, in his answer, insisted that the plaintiff was guilty of the theft with which he was charged, and that while awaiting his trial frequently made application to him to compound the prosecution, and offered to pay him $250, the estimated amount of his damages, which the defendant positively refused; that after repeated solicitation, he consented to permit the plaintiff to confess the judgment mentioned in the bill, in satisfaction of the damages he had sustained. But the defendant positively denied that he ever promised the plaintiff that the judgment should not be enforced in case corporal punishment (188) was inflicted upon him, or that he ever gave the plaintiff to understand, or any reason to hope, that the confession of the judgment should in any way affect the criminal prosecution.
A replication was filed and testimony taken, which is stated in the opinion of his Honor, Judge HALL.
It appears from the testimony in this case that the plaintiff was a principal actor in selling the cotton that had been stolen from the storehouse of the defendant. From his advanced age, it is not very likely that he participated in fact in the arson which was committed to conceal the theft. But it is more than probable that he was privy to it. All the circumstances of the case form a mass of evidence against him, of a very suspicious character. Being in this predicament, it is necessary to ascertain whether he confessed the judgment to the defendant under a sense of justice, and with a view to make remuneration for the injury done him, or whether he did so from the influence of fear or *Page 156 
apprehension, arising from the prosecution then pending against him, and with a hope that the due course of law might thereby be averted; and whether the latter expectation was not cherished by the overtures made to him by the defendant and his agent.
Freed from all restraint, it is not very likely that a man whose conduct has been represented in so criminal a point of view should in the course of a few weeks return to a sense of reason and justice, and voluntarily make amends to the injured party for a crime that he had committed, and thereby tacitly acknowledge that he was the author of it. The defendant's first object seems to have been to be compensated for the loss he had sustained, rather than bring to punishment an infirm old man. In the first, he was governed by a sense of justice due to himself. In the latter, his humanity might have been predominant. He forebore making any settlement with the plaintiff, owing to an (189) apprehension that its interfering with the prosecution against the plaintiff might make it a nullity. But he took counsel, and was advised that he could not compromise the prosecution, but that if the plaintiff was found guilty, he could say that he would not crave a judgment against him. To this he assented; and of this the plaintiff was informed by the defendant's agent, Blount, whilst he was in jail. Connected with this part of the case is the testimony of Daniel Daughtry. He says that Blount, the defendant's agent, told him to tell the plaintiff that if he would come into court and confess judgment for $150, that he should have a credit of twelve months; and that if he suffered any corporal punishment, the judgment should be void. Daughtry states that he made this known to the plaintiff, and that the plaintiff asked his advice. He, Daughtry, told him he did not know what would be sworn against him. Plaintiff said it might be best to confess a judgment, for he was fearful of false swearing. Daughtry then informed Blount that the plaintiff was willing to confess a judgment. To a question asked Blount, he said he did not recollect having such conversation with Daughtry, but he does not say that such conversation did not take place. He states himself, however, that he told plaintiff if he was found guilty the defendant would not crave judgment against him. Frederick Jones says that Daughtry came to Blount and wished a compromise of Heath's business. Blount told him that if he would give $250, and leave the State or county, he would do so. Daughtry then asked what would become of the prosecution. Blount answered, he would see to it, or attend to it. John Stevens, who seems to have been a fellow prisoner of plaintiff, says that Blount went into the jail as often as twice, and proposed to the plaintiff to make up for a certain sum, and told him that he would not see him take the whipping he would have to take, for $20. *Page 157 
From this evidence, the impression on my mind is irresistible that the judgment was confessed under the influence of a hope held out by the defendant Blount, either that the due course of law would be averted or that if it was not, and the plaintiff was punished, the judgment should be of no effect. No doubt, the plaintiff may owe, (190) and in justice ought to pay, to the defendant the amount of the judgment confessed. But individual justice to the defendant is not to be preferred to the public justice that is due to the community. Sound policy forbids it; and the prosecution against the plaintiff may be some proof why it should forbid it. For the defendant says that although the testimony appearing in this case was presented to the grand jury, they found the bill not a true bill, as he supposed, through humanity to the aged prisoner. Might it not have been, too, through a favorable impression made upon the jury by the prosecutor, after the confession of the judgment to him?
I think the defendant ought to be enjoined from proceeding on or making any use of the judgment complained of. But it may be held as a security for any amount which the defendant shall hereafter recover against the plaintiff. And the plaintiff is enjoined from pleading the statute of limitations, in any suit that may be brought by the defendant to recover the amount due on account of the subject-matter for which the judgment was confessed.